## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LKQ CORPORATION and )
KEYSTONE AUTOMOTIVE )
INDUSTRIES, INC., )
     )
         Plaintiff, )
     )
         v. ) Civil Action No. 19-54-RGA-SRF
     )
FCA US LLC, )
     )
         Defendants. )

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Presently before the court in this trademark infringement action is defendant FCA US

LLC's[1] ("FCA" or "defendant") motion for partial dismissal[2] for failure to state a claim upon

which relief can be granted, or, in the alternative, bifurcation and stay of certain counts.[3] (D.I.

15) Plaintiffs, LKQ Corporation and Keystone Automotive Industries, Inc. (collectively, "LKQ"

or "plaintiffs"), oppose the motion. (D.I. 22) For the following reasons, I recommend that the

court DENY FCA's motion to dismiss Counts II, III, IX, X, XI, XIV, and XV, and GRANT

FCA's motion to bifurcate and stay Counts IX, X, and XI.[4]

---

[1] FCA was formerly known as Chrysler Group LLC. (D.I. 2 at ¶ 68)

[2] Counts I, IV, V, VI, VII, VIII, XII, XIII are not the subject of FCA's motion for partial dismissal.

[3] Specifically, FCA seeks to bifurcate and stay counts IX through XI, relating to alleged RICO and antitrust claims. (D.I. 16 at 16-17)

[4] The briefing for the pending motion is as follows: defendant's opening brief (D.I. 16), plaintiffs' answering brief (D.I. 22), and defendant's reply brief (D.I. 25).

## II.   BACKGROUND[5]

LKQ Corporation imports aftermarket automotive replacement grilles ("Replacement Grilles") to restore damaged vehicles to their original condition and appearance. (D.I. 2 at ¶¶ 59-60, 83) Keystone Automotive Industries, Inc. is a wholly owned subsidiary of LKQ. (*Id*. at ¶ 58) LKQ sells many of its Replacement Grilles under its own "REPLACE" trademark, with packaging indicating that the parts are aftermarket parts. (*Id.* at ¶ 66)

In 2014, LKQ entered into a design patent license agreement ("DPLA") with FCA, the Original Equipment Manufacturer ("OEM") of the vehicles requiring Replacement Grilles. (*Id.* at ¶¶ 5, 7, 44) The DPLA granted LKQ a license to the entirety of FCA's design patent portfolio. (*Id*. at ¶¶ 7, 96) Since early 2017, LKQ has paid FCA over \$5 million in royalties pursuant to the DPLA. (*Id*. at ¶ 9) In addition to its design patents, FCA owns twelve trademark registrations covering automotive grille designs, and one trademark for a Chrysler logo design (the "FCA Marks"),[6] which form the basis of FCA's accusations of trademark infringement. (*Id.* at ¶¶ 5, 8; Ex. A) The complaint alleges that LKQ has an implied license to use the FCA Marks in accordance with the DPLA. (*Id.* at ¶ 98)

In a March 27, 2017 email to United States Custom and Border Protection ("CBP"), FCA identified LKQ's Replacement Grilles as counterfeit and stated that it "desires prosecution of this matter." (*Id*. at ¶ 16; Ex. D) On more than 180 occasions thereafter, CBP has detained, seized, and threatened forfeiture of LKQ's Replacement Grilles at several U.S. entry ports on the basis

---

[5] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the present motion to dismiss. *See Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

[6] The FCA Marks are identified at paragraph 70 of the complaint, and are attached as Exhibit A to the complaint. (D.I. 2 at ¶ 70; Ex. A)

that the products infringed the FCA Marks.[7] (*Id.* at ¶¶ 3-4, 10, 12) On July 12, 2017, LKQ
provided CBP with the DPLA after FCA permitted the disclosure. (*Id.* at ¶ 21) In emails to CBP
in May 2017, FCA authorized some of LKQ's imports, but indicated that the DPLA served only
as a license to individual part numbers identified at FCA's discretion. (*Id.* at ¶¶ 18-19, 30; Ex.
E)

LKQ brought various claims against the United States government in the District of
Delaware and the District of Columbia on February 7, 2018 and June 29, 2018, respectively, to
force the government to initiate the necessary forfeiture actions in a timely fashion. (*Id.* at ¶¶ 25,
28, 30, 32-34; Ex. H) In response, the government instituted forfeiture actions on August 17,
2018 in Georgia and California resulting from seizures at ports in those states. (*Id.* at ¶¶ 34-35)

LKQ filed this action on January 9, 2019, seeking a declaratory judgment as to the
intellectual property, antitrust and Racketeer Influenced and Corrupt Organizations Act
("RICO") claims, and asserting a cause of action for breach of contract as to FCA's violations of
the DPLA. (D.I. 2) On April 1, 2019, FCA filed a motion for partial dismissal for failure to
state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 15) In its motion, FCA
moves to dismiss the following causes of action: Count II – Unenforceability of trademarks
against LKQ due to functionality; Count III – Unenforceability of trademarks against LKQ due
to the right of repair; Count IX – Conducting an enterprise in violation of 18 U.S.C. § 1962(c)
(RICO); Count X – Antitrust violation of Sherman Act Section 1 for trademark misuse; Count XI
– Antitrust violation of Sherman Act Section 2 for the knowing assertion of unenforceable

---

[7] The government did not move forward on forfeiture claims as to any of the seized Replacement
Grilles corresponding to Ford vehicles. (D.I. 2 at ¶ 41) Similarly, the government did not seize
LKQ's Replacement Grilles intended for the repair of General Motors Company vehicles. (*Id.*)
Other OEMs, such as BMW, provided CBP with complete authorization of LKQ's imports
relating to its trademark designs. (*Id.* at ¶ 42; Ex. M)

trademarks; Count XIV – Breach of covenant of duty of good faith and fair dealing; and Count XV – Unjust enrichment. (D.I. 16 at 4-15) Alternatively, to the extent the court does not dismiss Counts IX, X, and XI, FCA moves to bifurcate and stay those claims pending resolution of LKQ's trademark and contract claims. (*Id.* at 16-17)

## III.  LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]."

4

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at

556). The court's analysis is a context-specific task requiring the court "to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. 663-64.

## IV.   ANALYSIS

### A.   Count II: Pleading Trademark[8] Unenforceability Due to Functionality[9]

A product feature that is functional cannot serve as a trademark. *See TrafFix Devices,*

*Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001); *see also* 15 U.S.C. § 1115(b)(8). "A

registered trade dress is presumed to be non-functional unless the alleged infringer demonstrates

that it is functional." *Sweet Street Desserts, Inc. v. Chudleigh's Ltd.*, 69 F. Supp. 3d 530 (E.D.

Pa. 2014), *aff'd*, 655 F. App'x 103, 109 (3d Cir. 2016); *see also* 15 U.S.C. § 1115. To determine

whether a product feature is functional, the Supreme Court considers two tests: (1) whether the

product feature "is essential to the use or purpose of the article or if it affects the cost or quality

of the article," or (2) whether "the 'exclusive use of [the product feature] would put competitors

at a significant non-reputation-related disadvantage.'" *TrafFix Devices, Inc. v. Mktg. Displays,*

*Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165

---

[8] FCA owns registered trademarks for its automotive grille designs. (7/30/19 Tr. at 5:1-4) In its declaratory judgment complaint, LKQ does not seek cancellation of the marks. (D.I. 2) However, LKQ requests permission to amend the complaint to seek cancellation of the marks, depending on the court's recommendation on the issue of functionality. (D.I. 22 at 5 n.2)
[9] The parties disagree regarding who bears the burden to establish functionality or non-functionality. FCA argues it does not bear the burden of proof on non-functionality because FCA's trademark registrations shift the burden of proof to LKQ to prove functionality. (7/30/19 Tr. at 6:19-22) According to LKQ, however, FCA bears the burden of proving non-functionality under the related goods doctrine because the trademark registrations owned by FCA cover the vehicles as the class of goods, as opposed to the grilles. (*Id.* at 20:8-21:11) Thus, LKQ contends that FCA bears the burden of proving non-functionality for trademarks applied to vehicles, and LKQ bears the burden of proving functionality for trademarks applied to grilles specifically. (*Id.* at 21:12-23:18) In the context of the pending motion to dismiss, the court need only determine whether LKQ's complaint adequately pleads functionality, and the court need not reach the issue of whether the ultimate burden of proof has been satisfied.

(1995)). If the court determines that the design is functional under the first test, "there is no need
to proceed further to consider if there is a competitive necessity for the feature." *Id.*; *see also*
*Sweet Street Desserts*, 69 F. Supp. 3d at 543.

### 1. Essentiality

Under the first *TrafFix* test, FCA contends that Count II of LKQ's complaint should be
dismissed because the functionality doctrine does not apply where, as here, LKQ alleges that the
FCA Marks are functional when LKQ uses them in its Replacement Grilles, but LKQ does not
challenge the validity of the FCA Marks themselves.[10] (D.I. 16 at 5) FCA argues that the
complaint contains no allegation that the FCA Marks are essential to the use or purpose of FCA's
automotive grilles, and instead alleges that the FCA Marks are essential to the use or purpose of
LKQ's infringing grilles. (D.I. 25 at 3)

In response, LKQ alleges that the shape and features of the Replacement Grilles are
functional because they are essential to the use and purpose of the Replacement Grilles as
replacement parts. (D.I. 22 at 4-5) According to LKQ, functionality is not only an issue at the
registration stage, and it may be asserted as a defense at any time, even absent a claim that the
FCA Marks are invalid. (*Id.* at 5) LKQ alleges that FCA is barred from arguing otherwise due
to the *res judicata* or collateral estoppel effect of the Central District of California's decision on
remand in *Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062 (C.D. Cal. 1999).[11] (*Id.* at 6; 7/30/19
Tr. at 14:7-16:6)

---

[10] Paragraph 90 of the complaint states, "[t]o be clear, the [FCA] Marks are not invalid on the
grounds that they are functional." (D.I. 2 at ¶ 90)

[11] In *Vanzant*, FCA asserted its grille trademark against a manufacturer of grille covers for Jeep
vehicles. *Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1068 (C.D. Cal. 1999). On remand,
the district court denied FCA's motion for summary judgment of non-functionality in the context
of the grille cover market for Jeep vehicles, concluding that the accused grille covers could not

6

LKQ's complaint lacks sufficient factual matter to suggest that the FCA Marks are functional under the first *TrafFix* test. The complaint alleges that "the design of a replacement part is essential to the use or purpose of the replacement part," in part because "insurance repairs are typically required, both contractually and legally, to restore a car to its original appearance." (D.I. 2 at ¶¶ 88, 91) Product features, such as grille designs, are functional if they are "essential to the use or purpose of the article." *TrafFix*, 532 U.S. at 32. The relevant inquiry in this case is whether the FCA Marks are essential to the use or purpose of the FCA grilles, because the functionality doctrine does not apply to circumstances in which the plaintiff's mark makes a defendant's product more useful. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 161 (4th Cir. 2012) ("Once it is determined that the product feature . . . is not functional, then the functionality doctrine has no application, and it is irrelevant whether Google's computer program functions better by use of Rosetta Stone's nonfunctional mark."); *see also Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1030-31 (9th Cir. 2004) (holding that the doctrine of functionality did not help defendants because the court was "not dealing with defendants'

---

be used on vehicles other than Jeep vehicles. *Id.* at 1071. In accordance with the Ninth Circuit's decision remanding the case, the district court did not reach the merits of the functionality analysis, concluding that FCA had failed to present sufficient evidence to establish the non-functionality of the grille design when used to make grille covers. *Id.* at 1072. In *Vanzant*, as here, FCA argued that its registered trademarks could not be functional as a matter of law because "questions of functionality had already been determined in Chrysler's favor by the Trademark Office when it granted Chrysler's trademark incontestable status," which "provides the trademark with a conclusive presumption of validity." *Chrysler Corp. v. Vanzant*, 124 F.3d 210, 1997 WL 547993, at *3 (9th Cir. 1997). However, the Ninth Circuit rejected FCA's argument on this point, holding that the issued registration for vehicle grilles did not extend protection to other products, such as the challenged protective grille cover. *Id.* at *2. The rulings in *Vanzant* do not have *res judicata* or collateral estoppel effect on FCA's challenge to LKQ's functionality defense at the pleading stage. In *Vanzant*, the district court denied summary judgment of non-functionality due to a lack of evidence, emphasizing the factual nature of the inquiry and declining to reach a decision on the merits regarding functionality. *Id.* at *3. Moreover, the question before the court was whether the defendant should be permitted to make grille covers, as opposed to replacement grilles. *Id.*

wish to trademark their computer program, but with [plaintiff's] ability to protect the trademarks it already uses to identify its products.").[12] The focus of the complaint on the functionality of LKQ's Replacement Grilles is therefore misplaced.

Having determined that LKQ's complaint fails to sufficiently plead the functionality of the grille features under the first *TrafFix* test, the court proceeds to consider if LKQ adequately pleaded a competitive necessity for the features under the second *TrafFix* test.

## 2. Competitive necessity

Regarding the second *TrafFix* test, FCA argues that LKQ's pleading does not satisfy the competitive necessity test because there is no assertion that vehicles must have automotive grilles fashioned similarly to the FCA Marks to compete in the market for vehicle parts.[13] (D.I. 25 at 3 n.3) According to FCA, LKQ could manufacture Replacement Grilles that fit within the outline of FCA's OEM grilles, while having a different overall design or appearance that does not infringe the FCA Marks. (7/30/19 Tr. at 12:20-13:12) Moreover, FCA contends that consumers' preference for Replacement Grilles matching FCA grilles does not demonstrate a competitive necessity related to a non-reputational disadvantage, as required under Third Circuit precedent. (7/30/19 Tr. at 11:11-12:6)

---

[12] LKQ contends that *Playboy* and *Rosetta Stone* are inapposite because those cases involve defendants using a plaintiff's word mark as a search term to trigger ads of plaintiff's respective competitors. (D.I. 22 at 6) In contrast, LKQ allegedly uses the FCA Marks to return consumers' genuine FCA vehicles to their original appearance, using the trademarked design as an essential aspect of the product. (*Id.* at 6-7) These distinctions do not alter the fact that the complaint in the present action fails to allege facts supporting a finding that the FCA Marks are essential to the use or purpose of FCA's grilles.

[13] FCA takes the position that LKQ views the context for functionality too narrowly, defining the relevant market as replacement grilles for FCA's vehicles. (7/30/19 Tr. at 12:7-10) FCA notes that LKQ imports a wide variety of aftermarket parts for vehicles beyond replacement grilles. (*Id.* at 12:10-16) Issues surrounding the proper scope of the relevant market implicate factual questions not appropriately resolved at this stage of the proceedings.

In response, LKQ contends that the FCA Marks are protectable in the context of competing OEMs, but they are not protectable against manufacturers of replacement parts because consumer preference and state insurance laws require uniformity. (D.I. 22 at 5) Accordingly, LKQ contends that the relevant market is that of aftermarket sales of replacement grilles for FCA vehicles. (*Id.* at 4; D.I. 2 at ¶ 80) LKQ argues that exclusive use of the FCA Marks by FCA "would put competitors at a significant non-reputation-related disadvantage" because there are no available alternatives. (D.I. 22 at 7)

The court should "consider indicia of competitive necessity, such as the availability of alternative designs" when determining if FCA's exclusive use of the FCA Marks creates a "significant non-reputation-related disadvantage" for LKQ. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1071 (9th Cir. 2006); *TrafFix*, 532 U.S. at 32. Courts have "squarely rejected the notion that 'any feature of a product which contributes to the consumer appeal and saleability of the product is, as a matter of law, a functional element of that product.'" *Au-Tomotive Gold*, 457 F.3d at 1073 (internal citation omitted). Otherwise, "the more appealing the design, the less protection it would receive." *Id.* (internal citation omitted).

LKQ's pleading sufficiently alleges that the FCA Marks contribute to LKQ's ability to sell its products, and that use of the FCA Marks is required for restoration uniformity. Specifically, the complaint explains that "competitors in the aftermarket replacement grille market have little, if any, freedom to modify the design or appearance of said replacement grilles" because "state laws and regulations, case law, insurance contracts, and consumer preference, auto body vehicle repair shops and the insurance companies that pay for vehicle repair work demand replacement grilles having the same appearance as the original grille." (D.I. 2 at ¶ 83) While courts "have squarely rejected the notion that any feature of a product which

9

contributes to the consumer appeal and saleability of the product is, as a matter of law, a functional element of that product," *see Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1073 (9th Cir. 2006) (internal quotations omitted), the allegations in LKQ's complaint go beyond issues of consumer appeal to reach the requirements of state laws, insurance companies and repair shops.

LKQ also sufficiently pleads that there are no available alternatives for replacement grille designs other than the FCA Marks. (D.I. 2 at ¶ 80, 82-84, 91-92) In this regard, LKQ has adequately pleaded that FCA's exclusive use of the FCA Marks may create a significant non-reputation-related disadvantage for LKQ. (*Id.* at ¶¶ 1, 83, 137) Consistent with the allegations in the complaint, FCA alleges that the grille designs themselves are the FCA Marks in this case. (7/30/19 Tr. at 13:1-5) In such cases, "when the aesthetic design of a product is *itself* the mark for which protection is sought," the mark may be deemed functional "if giving the markholder the right to use it exclusively 'would put competitors at a significant non-reputation-related disadvantage.'" *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 219-20 (2d Cir. 2012) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)). The disadvantage pleaded by LKQ stems from the monopoly sought by FCA through its efforts "to exclude competitors like LKQ, the largest non-Chrysler supplier of aftermarket repair grilles in North America," as opposed to a disadvantage resulting from customers' desires for FCA-marked goods due to their reputation and association with FCA. (D.I. 2 at ¶ 87); *Au-Tomotive Gold*, 457 F.3d at 1074. FCA's position that LKQ could produce grilles that fit within the outline of the FCA Mark, but have a different overall appearance, raises issues of fact to be resolved at a later stage of the proceedings. (7/30/19 Tr. at 13:6-12)

10

At this stage in the case, the court may only consider whether the complaint states

facially plausible claims. Whether or not such claims are factually supportable is a question for

resolution at a later stage of the litigation. "The Third Circuit has held that functionality is a

question of fact." *Sweet Street Desserts*, 69 F. Supp. 3d at 544 (citing *Shire U.S. Inc. v. Barr

Labs., Inc.*, 329 F.3d 348 (3d Cir. 2003); *CIBA-GEIGY Corp. v. Bolar Pharma. Co., Inc.*, 747

F.2d 844, 850 (3d Cir. 1984)). For the reasons previously stated, LKQ's complaint adequately

pleads that the specific design of its Replacement Grilles is a competitive necessity to serve the

aftermarket replacement automotive part market. (D.I. 2 at ¶ 88) Consequently, I recommend

that the court deny FCA's motion to dismiss Count II.

## B. Count III: Pleading Trademark Unenforceability Due to Right to Repair

FCA seeks dismissal of LKQ's cause of action for unenforceability of the FCA Marks

under the right to repair doctrine, which provides that property owners have the right to repair or

alter trademarked goods without implicating the Lanham Act. (D.I. 16 at 6-7) FCA contends

that the repair doctrine applies only to the refurbishment of genuine goods, and does not extend

to new, non-genuine goods such as LKQ's Replacement Grilles. (*Id.* at 6; D.I. 25 at 4) FCA

alleges that LKQ cannot prevail on the argument that it is repairing FCA's genuine vehicles, as

opposed to the grille itself, because the allegedly infringing goods at issue are LKQ's

Replacement Grilles. (D.I. 25 at 4)

In response, LKQ argues that the product being repaired by the addition of LKQ's

Replacement Grille is a genuine FCA vehicle. (D.I. 22 at 8) According to LKQ, the trademark

at issue is the grille design itself, which is applied to the genuine FCA vehicle. (*Id.*) Therefore,

LKQ alleges that the repair of genuine FCA vehicles with its Replacement Grilles is covered by

the right to repair doctrine, and does not constitute a Lanham Act violation. (D.I. 22 at 8-9)

I recommend that the court deny FCA's motion to dismiss Count III of the complaint regarding the right to repair doctrine, which is plausibly alleged in the complaint. The complaint alleges that the trademark at issue is the design of the grille or logo, and the good requiring repair is the FCA vehicle: "As to the [FCA] Marks, if the vehicle is the good needing to be repaired or to be refurbished, and the design of the grille or logo constitutes a trademark (as Chrysler contends), LKQ can, as a matter of law, supply parts to the automotive repair shops that reapply the grille/logo/trademark to that good in order to repair it for a customer if there is no confusion as to the source." (D.I. 2 at ¶ 94) The Supreme Court's seminal decision on the right to repair doctrine in *Champion Spark Plug Co. v. Sanders* and the Federal Circuit's decision in *Nitro Leisure Products, L.L.C. v. Acushnet Co.* support the court's recommendation.

In *Champion*, the respondents collected, repaired, reconditioned, and resold used spark plugs which retained the "Champion" mark. *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 126 (1947). The Supreme Court concluded that the reconditioned spark plugs could be resold with the "Champion" mark, so long as the spark plugs were identified as refurbished goods. *Id.* at 130-31. Applying the Supreme Court's analysis in *Champion* to the facts of the present case, the right to repair doctrine extends to the refurbishment of genuine FCA vehicles with Replacement Grilles constituting the FCA Marks to restore the FCA vehicles to their original condition. *Id.* at 129-30.

Similarly, in *Nitro Leisure Products*, the Federal Circuit addressed circumstances in which the defendant obtained, refurbished, and sold used golf balls at a discounted rate. *Nitro Leisure Prods., L.L.C. v. Acushnet Co.*, 341 F.3d 1356, 1358 (Fed. Cir. 2003). As part of the refurbishment process, the defendant would repaint the balls and reaffix the original manufacturer's trademark with an additional mark to indicate that the balls were used and

12

refurbished. *Id.* The Federal Circuit concluded that the defendant properly reaffixed the trademark to the refurbished, genuine golf balls, holding that "so long as the customer is getting a product with the expected characteristics, and so long as the goodwill built up by the trademark owner is not eroded by being identified with inferior quality, the Lanham Act does not prevent the truthful use of trademarks, even if such use results in the enrichment of others." *Id.* at 1362-64. Like the circumstances in *Nitro*, LKQ supplies the FCA Mark in the form of a Replacement Grille for use in refurbishing the genuine FCA vehicle. Taking the well-pleaded allegations of the complaint as true at this stage of the proceedings, such conduct may plausibly fall within the scope of the right to repair doctrine.

## C. Counts IX, X, XI, XIV, and XV: Sufficiency of Pleading Exception to *Noerr-Pennington* Immunity

"*Noerr-Pennington* provides broad immunity from liability to those who petition the government, including administrative agencies and courts, for redress of their grievances." *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). Immunity under the *Noerr-Pennington* doctrine extends to business torts due to the doctrine's foundation on a First Amendment right of petition. *IGT v. Bally Gaming Int'l Inc.*, C.A. No. 06-282-SLR, 2010 WL 1727388, at *2 (D. Del. Apr. 28, 2010) (citing *Cal. Motor Transp.*, 404 U.S. at 510; *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999)); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 343 F. Supp. 2d 272, 324 (D. Del. 2004). The law is well-established that "[a] court may decide the applicability of the *Noerr-Pennington* doctrine on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if no factual issues are present." *ADP, LLC v. Ultimate Software Grp., Inc.*, 2018 WL 1151713, at *3 (D.N.J. Mar. 5, 2018) (citing *Trustees of*

*Univ. of Pa. v. St. Jude Children's Res. Hosp.*, 940 F. Supp. 2d 233, 242-43 (E.D. Pa. 2013)); *see also Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 63 (1993) ("Where, as here, there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probably cause as a matter of law.").

The *Noerr-Pennington* doctrine is not absolute, and it can be overcome by application of the "sham exception," which applies if the lawsuit is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with business relationships of a competitor." *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961); *see also City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991). "The question whether a petition is a sham 'is generally a question of fact for the jury[.]'" *In re Flonase Antitrust Litig.*, 795 F. supp. 2d 300, 310 (E.D. Pa. 2011) (quoting *Indep. Taxicab Drivers' Emps. v. Greater Hous. Transp. Co.*, 760 F.2d 607, 612 n.9 (5th Cir. 1985)). The Supreme Court has articulated two tests for analyzing the sham exception, depending on whether the circumstances present a series of sham petitions or a single sham petition. *See Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 178-79 (3d Cir. 2015) (discussing the Supreme Court's decisions in *Cal. Motor Transp. Co. v. Trucking Unlimited* , 404 U.S. 508 (1972) and *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)).

To determine whether the sham exception applies to a single sham petition under the test set forth in *Columbia Pictures*, the court must first determine whether the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993). "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable

14

outcome, then the suit does not qualify as sham litigation and is immunized under the *Noerr-Pennington* doctrine." *Rochester Drug Co-op., Inc. v. Braintree Labs.*, 712 F. Supp. 2d 308, 316 (D. Del. 2010). If the challenged litigation is objectively meritless, the court must evaluate the subjective second prong of the sham litigation test to decide "whether the baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor.'" *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. at 60-61 (quoting *Noerr*, 365 U.S. at 144).

To determine whether the sham exception applies to a series of sham petitions under the test set forth in *California Motor*, the court must determine "not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Hanover*, 806 F.3d at 180 (quoting *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 811 (9th Cir. 1994)). "[T]his inquiry is prospective and asks whether the legal filings were made, 'not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment.'" *Id.*

### 1. Counts IX, X, XI: RICO and Antitrust Claims

FCA alleges that the *Noerr-Pennington* doctrine bars LKQ's RICO and antitrust claims (Counts IX, X, and XI) because those claims are predicated on FCA's petitioning activity which purportedly caused CBP to seize the Replacement Grilles and initiate forfeiture actions against LKQ for the importation of the Replacement Grilles. (D.I. 16 at 9-10) FCA argues that the recording of the FCA Marks with CBP and subsequent identification of seized goods as counterfeit are examples of protected activity immune under the First Amendment in accordance

15

with the *Noerr-Pennington* doctrine. (*Id.*) According to FCA, the sham exception to the *Noerr-Pennington* doctrine does not apply under the first prong of the *Columbia Pictures* test because FCA's lawful enforcement of its trademarks was not objectively baseless. (*Id.* at 11-13) Moreover, FCA alleges that the complaint fails to allege that FCA knowingly attempted to use the governmental process, as opposed to the outcome of the process, as an anticompetitive weapon under the second prong of the *Columbia Pictures* test. (*Id.* at 12-14)

LKQ does not challenge FCA's assertion that LKQ's claims are based on FCA's petitioning activity for enforcement of the FCA Marks by CBP. Instead, LKQ argues that the sham exception to the *Noerr-Pennington* doctrine applies, raising questions of fact which are not appropriately resolved on a motion to dismiss. (D.I. 22 at 9-10) Under either the *Columbia Pictures* or the *California Motor* test,[14] LKQ alleges that FCA's trademark position is a sham for several reasons: (1) the functionality doctrine, (2) the right to repair doctrine, (3) the fact that the DPLA permits plaintiffs to import the Replacement Grilles, and (4) the doctrines of laches, acquiescence, and estoppel. (*Id.* at 10-13) Furthermore, LKQ alleges that FCA used government process to interfere with LKQ's business by instituting the seizures of LKQ's merchandise all over the country, and thereby, involving LKQ in multiple legal suits. (*Id.* at 13-14) LKQ also

---

[14] The complaint in the present action alleges that "[t]he Chrysler-CBP Grille Monopoly Campaign has since resulted in more than 180 instances of unlawful detention, seizure, and threatened forfeiture of thousands of LKQ's products embodying approximately a hundred different grille designs," and the government "has . . . filed forfeiture actions against a total of 19 models of Repair Grilles corresponding to Chrysler vehicles." (D.I. 2 at ¶¶ 4, 12, 34-35) In accordance with Third Circuit precedent, therefore, FCA's petitioning activity should be analyzed under the *California Motor* test applicable to a series of filings. *See Hanover*, 806 F.3d at 180 ("[A] more flexible standard is appropriate when dealing with a pattern of petitioning. Not only do pattern cases often involve more complex fact sets and a greater risk of antitrust harm, but the reviewing court sits in a much better position to assess whether a defendant has misused the governmental process to curtail competition.").

16

argues that FCA is barred from *Noerr-Pennington* immunity because FCA made fraudulent statements and misrepresentations of facts and the law. *(Id.* at 16-18)

Whether FCA's petitioning activity constitutes a sham is a factual inquiry, which cannot be resolved at the motion to dismiss stage. *See FTC v. Shire ViroPharma Inc.*, C.A. No. 17-131-RGA, 2018 WL1401329, at *7 (D. Del. Mar. 20, 2018); *see also Trustees of Univ. of Pa.*, 940 F. Supp. 2d 233, 242-43 (E.D. Pa. 2013). LKQ sufficiently pleads that FCA encouraged CBP to prosecute LKQ, and FCA misconstrued the DPLA to suggest that LKQ's Replacement Grilles were counterfeit and to authorize only the importation of certain part numbers. (D.I. 2 at ¶¶ 117, 199, 210-212, 224) The subsequent seizures and release of thousands of Replacement Grilles add factual support to LKQ's position that FCA enlisted CBP to fraudulently enforce its trademarks and exclude LKQ from the market. *(Id.* at ¶¶ 12, 27, 210-212, 222-223) For these reasons, I recommend that the court deny FCA's motion to dismiss Counts IX, X, and XI under the *Noerr-Pennington* doctrine at this stage of the proceedings.

## 2. Counts XIV and XV: Contract Claims

FCA argues that *Noerr-Pennington* immunity applies equally to LKQ's contract claims at Counts XIV and XV of the complaint, because those claims are predicated on the same alleged petitioning activity as the antitrust claims. (D.I. 16 at 11; D.I. 25 at 8-9) In response, LKQ asserts that the *Noerr-Pennington* doctrine does not extend to FCA's contract claims.[15] (D.I. 22 at 9 n.5)

---

[15] At oral argument, LKQ addressed the Ninth Circuit's decision in *Microsoft v. Motorola*, 795 F.3d 1024, 1049 (9th Cir. 2015), to argue that there can be no *Noerr-Pennington* immunity for causes of action sounding in breach of contract. (7/30/19 Tr. at 48:19-49:5) In *Microsoft*, the Ninth Circuit held that "[e]nforcing a contractual commitment to refrain from litigation does not violate the First Amendment; if it did, every settlement of a lawsuit would be unenforceable as a *Noerr-Pennington* violation." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1048-49 (9th

When alleged state law claims, including contract claims, are based on the same

petitioning activity as the federal claims, they are not barred from consideration under the *Noerr-*

*Pennington* doctrine. *See Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999)

("[W]e have been presented with no persuasive reason why these state tort claims, based on the

same petitioning activity as the federal claims, would not be barred by the *Noerr-Pennington*

doctrine."). Here, LKQ's complaint alleges that FCA breached the DPLA by encouraging

anticompetitive enforcement of the FCA Marks by CBP, while FCA continued to collect

royalties under the DPLA. (D.I. 2 at ¶ 259-261, 266-270) Therefore, LKQ's contract claims are

premised on the same petitioning activity as the antitrust claims and are not barred from

consideration under the *Noerr-Pennington* doctrine.

LKQ relies on *Spear Pharmaceuticals, Inc. v. William Blair & Co., LLC*, in which the

court held that a defendant was not immune from liability under the *Noerr-Pennington* doctrine

on a motion to dismiss because the plaintiff stated bona fide claims alleging misappropriation

and breach of contract. *Spear Pharms., Inc. v. William Blair & Co., LLC*, 610 F. Supp. 2d 278,

288 (D. Del. 2009). Contrary to LKQ's contentions, *Spear Pharmaceuticals* does not stand for

the general proposition that contract claims are not covered by the *Noerr-Pennington* doctrine.

*See Spear Pharmaceuticals*, 610 F. Supp. 2d at 288. Rather, the court found that the defendant's

petitioning activity presented a factual inquiry, which could not be resolved on a motion to

dismiss because the plaintiff sufficiently pleaded facts to support its claims. *Id.*

---

Cir. 2015). The breach of contract claims in the present action are based on alleged violations of
the DPLA, and they are not based on a contractual commitment to refrain from litigation.

For the same reasons stated in § IV.C.1 *supra*, I recommend that the court deny FCA's motion to dismiss Counts XIV and XV under the *Noerr-Pennington* doctrine at this stage of the proceedings.

## D. Counts IX and X: Sufficiency of Pleading Common Purpose or Distinctiveness

FCA contends that LKQ fails to show a shared unity of purpose between FCA and CBP sufficient to sustain LKQ's causes of action under RICO and Section 1 of the Sherman Act. (D.I. 16 at 14) FCA highlights LKQ's allegations that FCA sought to "coerce and mislead the Government into entering a conspiracy" and that, "but for [its] fraudulent assertions…the Government would not have begun or continued seizing" the Replacement Grilles. (*Id.*; D.I. 2 at ¶¶ 56, 119) FCA asserts that LKQ's RICO claim also fails because 18 U.S.C. § 1962(c) requires a distinction between the person and the enterprise in the alleged conspiracy, but LKQ identified FCA as both the RICO defendant and the RICO enterprise by claiming that the government was an unwitting participant in FCA's alleged fraud. (D.I. 16 at 15).

In response, LKQ argues that the pleading adequately alleges FCA and CBP had the shared purpose of seizing LKQ's Replacement Grilles on more than 180 occasions. (D.I. 22 at 18) Furthermore, LKQ argues that the RICO enterprise need not have a shared fraudulent purpose. (*Id.*) Therefore, LKQ contends that FCA and CBP's agreement constituted a RICO enterprise regardless of whether CBP blindly followed FCA's instructions to seize the Replacement Grilles. (*Id.* at 19 & n.13)

"In order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.'" *U.S. v. Turkette*, 452 U.S. 576, 583 (1981) (internal citations omitted). An enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various

19

associates function as a continuing unit." *Id.* To plead a RICO claim, LKQ need not point to each party's fraudulent or criminal involvement in the enterprise. *See* 18 U.S.C. § 1962; *see also Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 993 (C.D. Cal. 2008). In the present case, LKQ sufficiently pleads that FCA and CBP had the shared purpose of seizing LKQ's Replacement Grilles on more than 180 occasions. (D.I. 2 at ¶¶ 3-4, 10, 12) Consequently, I recommend that the court deny FCA's motion to dismiss Counts IX and X as it relates to the sufficiency of the allegations pleading a common purpose and distinctiveness.

## E. Counts X and XI: Sufficiency of Pleading Sherman Act Claims

FCA contends that its efforts to enforce its trademark rights as alleged in the complaint were not unlawful under the Sherman Act because such aggressive enforcement "serve[s] the competitive purpose of furthering trademark policies." (D.I. 16 at 15); *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 61 (2d Cir. 1997). In response, LKQ alleges that FCA and CBP were participants in a monopoly to exclude LKQ from the market and restrain trade. (D.I. 22 at 20) Additionally, LKQ alleges that the government delayed both the referral of its claims to the local U.S. Attorneys and the filing of the statutorily required forfeiture actions. (*Id.*)

LKQ sufficiently states claims for antitrust violations pursuant to Sections 1 and 2 of the Sherman Act. (D.I. 2 at ¶¶ 209-230) Specifically, LKQ alleges that FCA's statements to CBP, in which FCA indicated that LKQ's Replacement Grilles were counterfeit and that FCA desired prosecution, established a conspiracy to restrain trade. (*Id.* at ¶ 210); *see* 15 U.S.C. § 1. Accordingly, LKQ contends that FCA and CBP conspired to create a monopoly in the Replacement Grille market by unlawfully seizing the Replacement Grilles. (D.I. 2 at ¶ 227); *see* 15 U.S.C. § 2. These causes of action are plausible on their face. *See Bell Atl. Corp. v.*

20

*Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Therefore, I recommend that the court deny FCA's motion to dismiss Counts X and XI.

## F. Bifurcation and Stay of RICO and Antitrust Claims

Having recommended denial of FCA's motion to dismiss Counts IX, X, and XI for the reasons stated in § IV.C-E, *supra*, the court turns to FCA's alternative request that the court bifurcate and stay those claims pending resolution of the underlying trademark and contract issues. (D.I. 16 at 16-17) According to FCA, these claims will be expensive and time-consuming to litigate due to the complexity of the issues. (*Id.*) Furthermore, FCA asserts that bifurcation may preserve judicial resources because the resolution of the trademark and contract claims could obviate the need for discovery and trial on Counts IX, X, and XI. (*Id.*) LKQ does not oppose defendant's position as to bifurcation or stay. (D.I. 22 at 20; 7/30/19 Tr. at 51:9-10)

Federal Rule of Civil Procedure 42(b) states that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The decision to bifurcate is within the discretion of the trial judge, to be decided on a case-by-case basis. *Argue v. David Davis Enters., Inc.*, 2008 WL 450097, at *1 (E.D. Pa. Feb. 15, 2008) (citing *Idzojtic v. Penn. R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1971)).

In this case, the resolution of the trademark and contract issues could obviate the need to proceed on LKQ's RICO and antitrust claims. Therefore, I recommend the court grant FCA's unopposed motion to bifurcate and stay Counts IX, X, and XI.

21

## IV.    CONCLUSION

For the foregoing reasons, I recommend that the court deny FCA's motion to dismiss Counts II, IX, X, XI, XIV, XV, grant FCA's motion to dismiss Count III, and grant FCA's motion to bifurcate and stay Counts IX, X, and XI.  (C.A. No. 19-54, D.I. 15)

Given that the court has relied upon material that technically remains under seal, the court is releasing this Report and Recommendation under seal, pending review by the parties.  In the unlikely event that the parties believe that certain material in this Report and Recommendation should be redacted, the parties shall jointly submit a proposed redacted version by no later than **September 17, 2019**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 511 (3d Cir. 1994) (internal quotation marks omitted)).  If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Report and Recommendation issued.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

22

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: September 10, 2019

Sherry R. Fallon
United States Magistrate Judge

23